I don't think it's Foreste. We'll see what the attorneys say. Good morning. Good morning. May it please the Court. There is ample evidence in this case that any reasonable person could find my client was a drug dealer beyond a reasonable doubt. However, the status as a drug dealer is not a crime. And what we have here are a series of arguments which may appear technical, but I think form the backbone of Order of Liberty in terms of due process. And so that — I want to put that into perspective. The first argument we have deals with the question of a conspiracy and a plea agreement. There are two prongs to that. One is the agreement itself, and the other, the conspiracy charge, whether it's a buy-sell. And then we have individual charges and the money laundering charge. With regard to the conspiracy — Counsel, did any of the charges for which this defendant was tried occur after he signed the plea agreement? The individual charges occurred after the plea agreement. The plea agreement was in May of 2018. Did any of his acts occur after he signed the plea agreement? Acts did occur after he signed the plea agreement. And the — Then why isn't that decided by the language of the plea agreement? Your Honor, the plea agreement should be judged by a fair contractual concept. And what you're saying, when a person enters into a plea agreement, they're giving up something. They're giving up a right to a trial. They're giving up a right to go to jail. And what was really happening there was, at that time, he thought it was putting behind him all the things up to that point. We have no problem with an indictment charging him with a conspiracy that started after the case. That's not what the agreement says. The agreement says the deal is off. Excuse me? The agreement says the deal is off if he commits further crime. Yeah. If that's the — The agreements are enforceable. If that's the deal, Your Honor, if that's interpreted that way, then it's meaningless. I have a client. Why? Why is it meaningless? Let me — Someone can get a promise from a defendant. I'm representing somebody. And they come to me and they say, we've got a plea agreement. We've got a deal. What does it mean? You would say ordinarily, it means what you've done to this point is over. Look forward. However, at this point, if you once smoke a joint, afterwards, the whole deal is off. And what it amounts to is saying that there really is no deal. In the sole discretion of the prosecutor, there's not even a standard of proof. The — and given the — What is unreasonable about expecting your client not to do what the jury found was done, which is sell oxycodone at least seven times after the plea agreement? I've got no problem with a conspiracy charge from the time of the plea agreement onward. The problem here — yeah. The problem here is the charge was a conspiracy that goes back. We're all the really juicy parts, the police officer, the corruption in New York. The question asked earlier is why isn't the government — why isn't this radically simplified by the argument that the government is released from any of its obligations if it — if your client commits further crimes? Your Honor, it does say that. And if the plea agreement — but the essence of agreement is in the last argument. It's the intention of the parties. The intention of the parties would say what's behind you is behind you. And you aren't going to be charged with that. And what goes forward — the government has plenty of aspects of how to deal with what's going forward. But they don't have to go back. And so what I as an attorney at that level have promised my man, that he is not going to be — he can look forward, and if he makes a crime, he'll be guilty of that crime. But what's behind him is behind him. Now, if we interpret — Let's look at the language of the agreement. The United States determines at its sole discretion that your client has committed any offense after the date of this agreement, has violated any condition of release, has provided any intentionally false information of probation — I'm focusing on the first paragraph — committed any offense after the date of this agreement. The obligations of the United States in this agreement will be void. In other words, if you — I agree the language says that, Your Honor, but that basically says that it means nothing, that a single prosecutor based upon valid standards can void the agreement. And that's not how it really works. It does. He's cabined to some extent. He's got to show that there's an offense. It would be — I don't think it could be voided under just say so without — Well, it says so, though. There has to be an offense, or violated a condition of release, or provided any false information. But the language says that the decision on that making is at the sole discretion of a prosecutor. Correct. Any problem with that? I think your client's signature is on this agreement. There's no standard that can even be tested. There's no even a process by which he can do it. But in the real world, I mean, it sounds great that way, and it's sort of a bulletproof language, but it does not — it is not what was really intended. When you negotiate a plea agreement, you're saying, hey, what's behind you is behind you. You know, we're doing this. You're giving up your right to — If the government applies or takes its advantage under that wording in a way that is unconscionable, courts will intervene and will not give the government its advantage because plea agreements are interpreted favorably to the criminal defendants, not favorable to the government. So, yes, it could be that prosecutors can overreach. They do. And they can abuse their powers, but courts exist to deal with it. This is not one of those cases. It looks like you're engaging in — the jury found you engaged in sales of OxyContin seven times, money laundering several times. This is not an abusive use of that. If I can speak very briefly, I've seen my time. Go ahead. To the points of the individual charges. In all fairness, one would look at those charges and would say he is guilty of some of those, and he's also innocent of some of those. The evidence would stand — there is no evidence which picks which one or the other. So you've got four charges, and it's a guess whether he is guilty of any one of those. There is no direct evidence tying it there. It — Well, there's evidence of conspiracy. He had various individuals he was working with who worked with him throughout. And at different levels of the chain here, there was Clark, there was your client, there was Hackney, who was his buddy up in Vermont. And then there was a guy who received the pills and in such quantities as they weren't for personal use. So we're talking about pretty clear evidence of a conspiracy here. I agree with that, right? The buyer-seller argument you're making is designed for a street sale between a user and a — Well — — seller and a dealer. That's not what we're dealing with here. Well, I think of it, Your Honor, as projecting a general economic civil business transaction on it. And of all the cases I've seen, I've never seen anything with less interaction between the parties other than a sale and buy. That he kept his business separate. There was a credit. There was a credit. Credit was used here. That's usually an indicator that it's not just a buyer-seller. But in the real world of commerce, credit is all the time. Right. And in the real world of medicine and drugs, you've got a conspiracy. Well — I think. I mean, if you're talking about commerce, in terms of buying and selling in quantities that users will eventually get later on, that's a different — it's quite different from the buyer-seller situation. If I told my clients, business clients, that they were in a conspiracy when they give credit to a purchaser of their product, I think they'd be shocked. I don't think that's the word — at least that doesn't mean to me what the word conspiracy means. I recognize that — I'm not saying that it means — it indicates that this is not a buyer-seller exception. That's the point. I'm sure that that's not the strongest point I have in the brief. Okay. The — but — Well, you have a stronger point when it comes to the shipments themselves. You make the argument that the shipments themselves, there were innocent shipments as well as — Yeah. And you can't tell one from the other. They say that you can because they used overnight express mail for the — But basically, they were — the defendant sent some — assuming it's proven — he sent some innocent packages, and he sent some guilty packages. He sent them differently, though, didn't he? He sent them differently. But — Some of them were sent by snail mail, and the others were sent by overnight mail. But you have four — four deliveries. And the evidence is that some of those were without pills. Some of them were pills. And you could not — if — if you tried these cases one at a time, you would not have got a conviction on any one of those because they couldn't prove the pills were there. The only reason you've got a conviction in this case is because the jointer. And that there are four cases there, and the jury can say some of them must have been. And so they convict them on all but one. And the evidence does not support the pills being there. You've reserved two minutes of rebuttal. We'll hear you then. Thank you. Thank you. Good morning, Your Honors. Greg Waples on behalf of the United States. I am content to rely on my brief on all points unless Your Honors have questions. Would you agree that the plea agreement should — is construed against the government? Absolutely. And the affidavit of Agent Dowd said that he had this defendant in his sights as early as January 2012. Agent Dowd's affidavit did say that he was aware that Mr. Forrest was an associate of other people who was in Agent Dowd's sights. I think distilling that — What were those other people doing? They were — They were selling drugs. They were trafficking in cocaine and oxycodone, whereas this particular conspiracy involves only oxycodone. And also — But isn't it a criminal offense known to the government as of the date of the plea agreement? If — They relate to possession with intent to distribute oxycodone. Yes. Well, didn't — I think you just said that Dowd had him in his sights as an associate of people who were selling oxycodone. Perhaps having him in Dowd's sights is an overstatement. I think Agent Dowd said he had heard of Mr. Forrest as being an associate of other persons in the Burlington area who are known to be trafficking in oxycodone and cocaine. He also had heard information to the effect that Mr. Forrest was involved in renting cars, for example, on behalf of these people he was associated with. Was there any evidence about who he was involved with at the time of the original indictment, the original plea agreement? I was not involved in the case in that time. I don't know the complaint. In other words, is the difference if he says, I knew he was an associate of Hackney in Vermont at the time of the original plea, and Hackney and Forrest are sort of the key, the hub, if you will, of the conspiracy, and then later on there's an indictment of Hackney and Forrest, or that conspiracy has proved. And under those circumstances, it would seem to me that that would be the same conspiracy. If he didn't know, because every drug dealer has a supplier and usually a customer. Right? The record below does not really speak to that point, Your Honor. That's all I can say on that point. Mr. Hackney had previously been prosecuted by our office, so he was a known quantity, so to speak. But whether he was known to have an association with Mr. Forrest, the record does not speak to that, and I have no personal knowledge. But in any event, as Your Honors, I think, pointed out during Mr. Langrock's presentation, this issue need not be decided because the government believes the defendant clearly breached the plea agreement, and therefore, any non-prosecution pledge that was contained in the agreement was void. Tell me about this. Is it your view, counsel, that once it's breached, you could bring in the earlier behavior, which was the subject of the plea agreement? We believe the expressed language in paragraph 11 of the 2013 plea agreement permits the government to prosecute Mr. Forrest for any crimes. In fact, I'll just quote from paragraph 11, which is on page 4 of the government's supplemental appendix. The United States will have the right in the event of a breach to recommend that the Court impose any sentence authorized by law and will have the right to prosecute him, Mr. Forrest, for any other offenses he may have committed in the District of Vermont, period. So, yes, I believe clearly we could prosecute Mr. Forrest for any crimes that were provable, whether the conduct occurred after or before the plea agreement. I think that's the only way to fairly construe that language, Your Honor. What about the shipments? Some were innocent shipments. Yes. Ms. Oterr. How was the jury able to decide? Well, Ms. Oterr was involved in assembling many of the packages, and she identified her handwriting on three and Mr. Forrest's handwriting on the four others on which the jury convicted. Those were packages that contained the pills. The jury found that they did. The indictment charged they were distributions. No, no, no. As far as she is concerned, did she testify that she only did pills in packages or did she testify that she did packages that did not contain pills? She was aware of packages being sent to Mr. Hackney in Vermont by snail mail that contained innocent items. But whenever pills were sent to Vermont, according to her testimony, they were sent via express mail. These seven deliveries that underpinned the distribution counts were all express mail packages. So the inference from her testimony is that each of those contained contraband. And six of those packages, by the way, had bogus sender name and sender address information. And as we set forth in our brief surrounding the receipt of those packages by Mr. Hackney, there are substantial cash deposits by Mr. Hackney or persons in Vermont to Mr. Forrest's bank account, supporting the inference that those deposits were proceeds from previously received pill packages. Thank you. Mr. Roberts. Just two very short points. One is on the conspiracy situation, did they have knowledge of it? Very simply, they had knowledge she was doing things, and a conspiracy could have been charged, could have been Michael Forrest and others known and unknown to the government, and it would have upheld that they could have charged that and dealt with it. Well, associating with people is not a conspiracy. Excuse me? Associating, having a sense. No, but when he's obtaining cars for drug traffic, there was obviously sufficient evidence. And that's only what we have on the surface. I mean, the one other point which ties into that. Were details required of the prior conspiracy? Yes, there was a he was a member of a conspiracy, but his supply chain and who he was dealing with could have been entirely different people. They weren't specified in the earlier investigation, and he didn't plead to that. The question is, there's no question that there is evidence of a conspiracy after that date. It's a separate situation beforehand. And what we're objecting to is the fact that he could have well been convicted on the evidence beforehand. One of the one of the on the breach of contract, the breach of the plea agreement, the hypothetical I throw out is, what if he had been acquitted on all the charges that the government brought? Then there would have been a breach upon the government. They would have brought a charge that was not a valid charge because he was acquitted, maybe. And what is the relief there? I mean, I think that we have to structure some sort of. He's acquitted doesn't mean that he didn't do the deed. It means the government failed to prove it beyond a reasonable doubt. I understand that, Your Honor. However, what, let's assume he is innocent. What is the standard by which a prosecutor can say, I have sole discretion to break this agreement or to go ahead with the prosecution? Scalia. I like the agreement and the fact that they have discretion. But let's leave the discretion out of it. Let's just take that provision out. If, leaving in sole discretion, and just say this prohibits further crimes, period. We know objectively that he has committed further crimes, not leaving the government out of the equation. Who makes that decision? Is it the prosecutor? Is there a hearing? I mean, just the fact that you say it doesn't make it happen. And there was a jury. A jury made a finding, made findings here. They go back to the point, if the jury had made other findings, would then the government have breached the agreement? The jury's finding that he did it means he did it. The jury's finding of not guilty doesn't mean he didn't do it. I understand that. I've argued that many times. But on the same token, what remedy does the person have? Somewhere a judgment has to be made whether it's okay. If you agree that the language has some holding, and that it's not oppressive and it's not contrary to justice, then you still have to have somebody or some mechanism for making the decision whether there's a breach. And right now it says it's the sole discretion of the prosecutor. And where do you move from that? Do you move to a judge? Do you move to a jury verdict? Do we have a special verdict saying if it's preponderance, he wins? If it's a decision? Sotomayor That valid question could arise in a case, in another case, because here your client is a crime wave. My basic problem is my next case, what do I tell my client when he offered a plea agreement? I tell him that if the prosecutor says that this doesn't like what's going on, this is invalid. Sotomayor You can say don't sign it. You can say don't sign it. Unless they leave out that in a sole discretion language. I mean. Justice Breyer That's not the real world. I mean, you know, I'm representing people who are giving up jail time. They're trying to. Sotomayor Government acts in bad faith, as Judge Jacobs pointed out before. If the government acts in bad faith and makes claims that aren't true, courts can intervene. Justice Breyer I'm not talking about bad faith. I'm talking about overreaching. You know, they didn't have to overreach in this case. They could have indicted him for what happened afterwards. They went through four superseding indictments, pushing him forward. And that's basically it. Thank you very much. Sotomayor We have your arguments. Thank you very much. Thank you. Thank you both.